UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RICHARD C. POE, II, *individually and derivatively for Dick Poe Motors, LP and Dick Poe Dodge, LP*; CARIBBEAN REINSURANCE LTD.; and ARCHIPELAGO - PERFORMANCE LTD., | § § § § § § § | |
| *Plaintiffs,* | § | EP-17-CV-00232-DCG |
| v. | § § | |
| ANTHONY E. BOCK; KAREN G. CASTRO; PAUL O. SERGENT, JR.; GERY RECKELBUS; and JOE MAILANDER, | § § § § § § | |
| *Defendants.* | § | |

## ORDER

Presently before the Court is Plaintiffs' "Objections to Report and Recommendation of the Magistrate Judge" (ECF No. 25) filed on July 9, 2018. Therein, Plaintiffs lodge a number of objections to Judge Leon Schydlower's conclusions in his Report and Recommendation ("R&R"). *See* Pls.' Objs. at 1–20. For the reasons that follow, the Court **OVERRULES** Plaintiffs' Objections and **ACCEPTS** Judge Schydlower's Report and Recommendation.

### I. BACKGROUND[1]

Plaintiffs are Richard C. Poe, II ("Richard") and the businesses controlled by him. Compl. ¶¶ 6–10, 43, 45, ECF No. 1. Defendants are employees of the Poe family "empire" of automotive dealerships in El Paso, Texas.[2] *Id.* ¶¶ 19, 24–28. The prelude to the alleged

---

[1] The Court accepts Plaintiffs' well-pleaded factual allegations as true. *See Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

[2] Anthony E. Bock acted as a certified public accountant for the Poe family and their businesses. *Id.* ¶ 26. Karen G. Castro worked as a personal assistant for Dick Poe, Richard's father. *Id.* ¶ 27. Paul O.

conspiracy began with Dick Poe establishing Poe Management, Inc. ("PMI") in 2007. *Id.* ¶ 22. PMI was established to consolidate the family business and transfer ownership of other family ventures to Richard. *Id.* Thus, Richard was issued all 1,000 shares of PMI at its creation, making him the sole shareholder. *Id.*

In 2015, Dick Poe's health began to fail. *Id.* ¶¶ 31–36. With Dick's health failing, Richard alleges that Defendants convinced his father to issue 1100 new shares of PMI to himself, diluting Richard's interest from 100% to 48%.[3] *Id.* ¶¶ 38–44. Days later, Dick Poe passed away. *Id.* ¶42. Following Dick's death, Richard alleges that Defendants conspired to wrest away control of the Poe family business. To start, Richard discovered that Defendant Sergent had prepared Dick's Last Will and Testament in 2014 naming Defendants Bock and Castro as co-independent executors of the estate and removing Richard as an executor and trustee of the estate. *Id.* ¶ 37. Next, Defendants Bock and Castro, as executors of the estate, appointed themselves directors of PMI using Dick's 52% share, elected themselves President and Vice President of PMI, removed Richard as Vice President of PMI, and reelected Defendant Sergent as PMI's Secretary. *Id.* ¶¶ 46–49.

Further, during the time leading up to and after Dick's death, Defendants sent letters via email and an interstate carrier to Gulf States Toyota, Inc. ("GST"), the distributor for the Dick Poe Toyota Dealership, attempting to oust Richard from the dealership by claiming that a valid stock purchase had been consummated by Dick prior to his death. *Id.* ¶¶ 50, 52–53. Nevertheless, GST rebuffed Defendants, advised them that Richard was the only authorized

---

Sergent Jr. served as an attorney for the Poe family and their businesses and as PMI's Secretary. *Id.* ¶ 25. Finally, Gery Reckelbus and Joe Mailander were employed as the general managers of the Dick Poe Chrysler/Jeep and Dick Poe Dodge dealerships, respectively. *Id.* ¶ 28.

[3] Richard had been sole shareholder in PMI for about eight years at that point. *See id.* ¶¶ 22, 39–40.

dealer representative for Dick Poe Toyota, and warned them not to interfere with Richard's operation and control of the dealership.[4] *Id.* ¶¶ 51, 53.

Subsequently, Defendants set their eyes on FCA US LLC ("FCA"), the manufacturer and distributor of the Chrysler, Jeep, Dodge, and Ram vehicles sold by Dick Poe Motors, LP ("Dick Poe Motors") and Dick Poe Dodge, LP ("Dick Poe Dodge"). *Id.* ¶ 55. After Dick's death, Defendants conducted "several" telephone calls and exchanged "numerous" emails with FCA falsely claiming to FCA that they were successors to Dick in the management of Dick Poe Motors and Dick Poe Dodge and that Richard was not Dick's successor. *Id.* ¶ 58. Further, after assuming control of the two dealerships, Defendants refused to sell vehicle-protection products reinsured by Richard's companies, Caribbean Reinsurance, Ltd. and Archipelago-Performance, Ltd., contravening the dealerships' past practices.[5] *Id.* ¶¶ 68–69. Ultimately, in May 2017, a jury determined that the share issuance diluting Richard's interest was invalid and unenforceable under Texas law, which made Richard the sole shareholder in PMI again. *Id.* ¶ 45.

On July 27, 2017, Plaintiffs filed the instant case alleging that Defendants violated 18 U.S.C. §§ 1962(b)–(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.* ¶¶ 73–84. More specifically, Plaintiffs contend that Defendants committed mail and wire fraud, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343, when they directed emails, letters, and telephone calls containing material misrepresentations to GST and FCA in order to gain and exert control over Dick Poe Toyota, Dick Poe Motors, and Dick Poe Dodge. *Id.* ¶¶ 76–78.

---

[4] As a result of Defendants persisting in their attempts to oust Richard, GST issued a notice of termination to Dick Poe Toyota. *Id.* ¶ 53. Richard commenced litigation and ultimately resolved the issue when he acquired 100% ownership and control of Dick Poe Toyota as well as the land on which it operates. *Id.* ¶¶ 53–54.

[5] Richard alleges that they instead sold FCA's vehicle-protection products in exchange for financial incentives from FCA. *Id.* ¶¶ 68, 72.

Plaintiffs also assert claims under Texas law for breach of fiduciary duties, breach of contract, tortious interference with contract, and conspiracy against Defendants. *Id.* ¶¶ 85–110.

## II. STANDARD

### A. Standard Governing Reports and Recommendations

A district court must review a magistrate judge's report and recommendation in light of any objection thereto filed. *See* 28 U.S.C. § 636(b)(1). The Court must conduct a *de novo* review of any portion to which any party files an objection. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *see also Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000). As to any portion for which no objection is filed, the Court reviews for clearly erroneous factual findings and conclusions of law. *See United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (*per curiam*). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006) ("A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole." (citing *United States v. Cluck*, 143 F.3d 174, 180 (5th Cir. 1998))).

### B. Standard Governing Motions to Dismiss

Under Rule 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion, a court accepts well-pleaded facts as true and construes them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as

true "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005)).

A complaint will survive a motion to dismiss if its facts, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint does not need detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not do. *Id.*; *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

While complaints generally need to contain only a short and plain statement of the claim, allegations of fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Wheeler v. JP Morgan Chase Bank, Nat'l Ass'n*, No. H-15-117, 2015 WL 1758071, at *3 (S.D. Tex. Apr. 17, 2015) ("[C]laims for fraud must state more than facts sufficient to make a plausible claim to relief[:] they must meet the Rule 9(b) pleadings standard."). Rule 9(b) requires, at a minimum, that a plaintiff set forth the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (internal quotation marks and citation omitted); *see also Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002) ("This Court interprets

Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."). But "[t]he particularity demanded by Rule 9(b) necessarily differs with the facts of each case." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067–68 (5th Cir. 1994). Thus, Rule 9(b)'s "pleading requirements may be relaxed when the facts relating to the fraud are 'peculiarly within the perpetrator's knowledge.'" *Gonzalez v. Bank of Am. Ins. Servs., Inc.*, 454 F. App'x 295, 298 n.3 (5th Cir. 2011) (*per curiam*) (quoting *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003)).

### III. DISCUSSION

The Court now considers Plaintiffs' objections to Judge Schydlower's R&R. As Judge Schydlower stated, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" in order to state a civil RICO claim. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496–97 (1985); R&R at 4. Judge Schydlower found that Plaintiffs failed to adequately plead a pattern of racketeering activity or that there was an enterprise. R&R at 4–9. Plaintiffs lodged a number of objections to Judge Schydlower's recommendation that the Court dismiss the cause. Pls.' Objs. at 2–20. The Court will first consider Plaintiffs' objections to Judge Schydlower's "pattern of racketeering" analysis before turning to their objections to the "enterprise" analysis.

### A. Pattern of Racketeering Activity

Judge Schydlower identified deficiencies in Plaintiffs' pleading of continuity and predicate acts for the pattern of racketeering activity element, which is necessary to state a civil RICO claim. R&R at 4–8. Plaintiffs have filed objections to Judge Schydlower's conclusions

regarding their pleading of continuity and predicate acts. Pls.' Objs. at 3–15. The Court will address Plaintiffs' objections in turn.

## 1. *Continuity*

With regard to continuity, Judge Schydlower found that "[a] single scheme to control the Poe auto dealerships, with Richard and his companies as the only victims, cannot form the basis of a civil RICO claim." R&R at 7. Plaintiffs objected to Judge Schydlower's conclusion on the grounds that he requires more than a single scheme to satisfy the pattern requirement, they have more than sufficiently alleged an open-ended pattern, they have also more than sufficiently alleged a closed period of continuity, and Judge Schydlower relied on inapposite decisions in the R&R. Pls.' Objs. at 10–15. The Court agrees with Judge Schydlower that the scheme Plaintiffs complain of cannot form the basis of a civil RICO claim.

"To establish a RICO pattern it must [ ] be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240–41 (1989). Continuity can be "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Further, the Supreme Court explained:

> A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*Id.* at 242. Whether there is a threat of continued racketeering activity is highly dependent on the specific facts of each case. *Id.* Furthermore, the Court agrees with the First, Second, Third,

Fourth, Seventh, and District of Columbia Circuits that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20–21 (1st Cir. 2000) (collecting cases); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014); *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001); *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998).

Plaintiffs claim that they have adequately pled both open-ended and close-ended continuity. Pls.' Objs. at 10–12. The Court disagrees. Further, Plaintiffs claim that Judge Schydlower erroneously required them to plead more than a single scheme to satisfy the pattern requirement. *Id.* at 10. However, that is not what Judge Schydlower held.[6] In the instant case, Plaintiffs allege a narrow scheme, containing the predicate acts of mail and wire fraud, to wrest away control of the Poe family business with five alleged conspirators and Richard being the only victim.[7] Such a scheme does not satisfy the RICO requirement of closed- or open-pattern

---

[6] Judge Schydlower held: "With the five defendants as its only participants, and Richard as its only victim, the defendants' narrow scheme to control the Poe auto dealerships after Dick's death does not satisfy the RICO continuity requirement." R&R at 8. At no point does he require more than one scheme. *See id.* at 7–8.

[7] The businesses that Richard alleges are victims are either owned and controlled by Richard or owned and controlled by PMI, of which Richard is the sole shareholder. *See* Compl. ¶¶ 6–10, 43; Pls.' Objs. at 3 ("Plaintiffs allege that Richard is the sole owner of Poe Management, Inc."). Moreover, Plaintiffs' Complaint focuses on Richard as the victim of the alleged scheme. Compl. ¶ 77 ("In particular, Defendants purposefully engaged in a scheme to defraud Richard and enrich themselves . . . . Defendants used an interstate carrier to mislead GST about the share issuance in connection with their unlawful scheme to defraud Richard . . . . Defendants have used, and continue to use, interstate wires for telephone calls and emails to mislead FCA about the share issuance and the management of the Dick Poe Chrysler/Jeep and Dodge dealerships in connection with their unlawful scheme to defraud Richard."). *See also id.* ¶ 62 ("By defrauding Richard to gain control over the Dick Poe Chrysler/Jeep and Dodge dealerships, Defendants unjustly enriched themselves to the financial detriment of Plaintiffs."); *id.* ¶ 78 ("Further, Defendants' racketeering activity constitutes a 'pattern of racketeering activity' within the

continuity. *See Alpert v. Riley*, No. CIV.A. H-04-3774, 2011 WL 564031, at *7 (S.D. Tex. Feb. 8, 2011) ("Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of closed or open pattern continuity." (internal quotation marks omitted)). *Cf. Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007) ("*Unlike our precedents identifying a single illegal transaction, there are multiple victims*, and there is no reason to suppose that this systematic victimization allegedly begun in November 2000 would not have continued indefinitely had the Plaintiffs not filed this lawsuit." (emphasis added)). Moreover, the Court disagrees with Plaintiffs that the decisions relied upon by Judge Schydlower are inapposite. For example, the Southern District of New York held in an analogous case that the "complaints plead four predicate acts of mail fraud, committed by one participant (Neschis) against a limited number of victims (Weizmann and the Jungs) in furtherance of a single fraudulent scheme (to gain control of Mrs. Gelman's assets). Such a discrete and limited scheme is insufficient to support closed-ended continuity." *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 257 (S.D.N.Y. 2002) (internal quotation marks omitted). Further, in another comparable case, the First Circuit held:

> In sum, while the complaint pleads a series of related racketeering acts and permits an inference that defendants defrauded appellant and two of his partners, we agree with the district court's determination that no reasonable jury could find that these allegations establish a RICO "pattern." Taken together, the acts as alleged comprise a single effort, over a finite period of time, to wrest control of a particular partnership from a limited number of its partners. This cannot be a RICO violation.

*Efron*, 223 F.3d at 21. The Court is persuaded by the reasoning of the *Efron* and *Weizmann* courts.

---

meaning of 18 U.S.C. § 1961(5) because their use of interstate carriers and interstate wires to defraud Richard was repeated multiple times over several years and the threat of similar, additional racketeering activity continues today.").

Upon granting a Rule 12(b)(6) motion, "the usual course of action . . . is to allow a plaintiff to amend his or her complaint." *Waste Control Spec, L.L.C. v. Envirocare of Tex., Inc.*, 199 F.3d 781, 786 (5th Cir. 2000). However, a court need not do so if the plaintiff has already pleaded his best case and it would be futile to permit him to replead. *See Brown v. DFS Servs., L.L.C.*, 434 F. App'x 347, 352 (5th Cir. 2011) (*per curiam*) ("[I]t is not reversible error 'in any case where the pleadings, when viewed under the individual circumstances of the case, demonstrate that the plaintiff has pleaded his best case.'" (quoting *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.1986))). Plaintiffs request that the Court allow them to amend their Complaint. Pls.' Objs. at 12, 13. Nevertheless, the Court finds that it would be futile to allow Plaintiffs to replead. With respect to the continuity requirement, it is the facts of the case that are deficient. Thus, Plaintiffs have pled their best case.

### 2. Predicate Acts

Judge Schydlower held that Plaintiffs' pleadings were insufficient because they failed to adequately plead causation for their first predicate act, the alleged mail fraud directed to GST, and failed to meet the heightened pleading standard under Rule 9(b) for the second predicate act, the alleged mail and wire fraud directed to FCA. R&R at 4–6. Plaintiffs object on the grounds that Judge Schydlower erroneously required a showing of reliance, erroneously concluded that Plaintiffs' allegations lacked specificity, and erroneously concluded that Plaintiffs failed to allege an injury. Pls.' Objs. at 3–9.

"A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity. The predicate acts can be either state or federal crimes." *In re MasterCard Int'l Inc.*, 313 F.3d 257, 261–62 (5th Cir. 2002). Where mail and wire fraud are

alleged as the predicate acts, a plaintiff must prove: (1) A scheme to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises; (2) interstate or intrastate use of the mails for the purpose of furthering or executing the scheme to defraud; (3) the use of the mails by the defendant connected with the scheme to defraud; and (4) actual injury to the business or property of the plaintiff. *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 428 (5th Cir. 1990).[8] Further, the Supreme Court explained that "to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 8–9 (2010) (internal quotation marks omitted). "In assessing proximate cause, 'the central question [we] must ask is whether the alleged violation led directly to the plaintiff's injuries.'" *Jackson v. Nat'l Ass'n for Advancement of Colored People*, 546 F. App'x 438, 442–43 (5th Cir. 2013) (*per curiam*) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).

In the instant case, Judge Schydlower found that Plaintiffs did not adequately plead causation for the alleged mail fraud directed at GST.[9] R&R at 5–6. Plaintiffs' objection that Judge Schydlower required them to show reliance as an element of the predicate act is a mischaracterization. Judge Schydlower correctly noted that reliance will often be necessary to prove causation in the fraud context. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) ("Of course, none of this is to say that a RICO plaintiff who alleges injury 'by reason

---

[8] The same analysis is used for both mail fraud and wire fraud. *United States v. Humphrey*, 104 F.3d 65, 70 n.3 (5th Cir. 1997).

[9] Plaintiffs also allege that Judge Schydlower held that they suffered "no injury." Pls. Objs. at 7. However, the Court construes Judge Schydlower's words differently. Judge Schydlower stated: "Having *caused* Richard no injury, Sergent's May 12th letter cannot form the basis for mail or wire fraud." R&R at 6 (emphasis added). Within the context of his R&R, the Court interprets Judge Schydlower as concluding that Plaintiffs failed to adequately plead causation, not that Richard suffered no injury.

of" a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations."). Moreover, Judge Schydlower correctly concluded that Plaintiffs have not sufficiently alleged causation in this case. *See* R&R at 5–6. Plaintiffs allege that Defendants sent letters fraudulently claiming that they were in charge and requesting an ownership change for Dick Poe Toyota that removed and replaced Richard as the only authorized dealer. Compl. ¶¶ 50–53. However, GST advised Defendants against any ownership change, told Defendants that it would not consent to any changes without Richard's written approval, and warned them to cease and desist trying to interfere with Richard's ownership and control of the Dick Poe Toyota dealership. *Id.* ¶¶ 52–53. Thus, GST did not rely on the alleged fraudulent representations in the letters. Indeed, the alleged fraudulent representations were to no avail because GST refused to consent to Defendants taking control of Dick Poe Toyota away from Richard. Accordingly, the purported mail fraud could not have caused Plaintiffs' alleged injuries.

Judge Schydlower also found that Plaintiffs' allegations of wire and mail fraud with regard to FCA lacked the specificity required under Rule 9(b). R&R at 6. Rule 9(b) requires particularity in pleading the circumstances constituting fraud; this requirement applies to the pleading of fraud as a predicate act in a RICO claim. *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* at 1139 (internal quotation marks omitted). Judge Schydlower is correct that Plaintiffs have failed to plead with sufficient specificity the alleged mail and wire fraud directed to FCA. Plaintiffs stated:

> Following Dick's death, however, Castro, on behalf of Defendants, conducted *several telephone calls and exchanged numerous emails* with FCA, which is located in Auburn Hills, Michigan, concerning the successor management of the Dick Poe Chrysler/Jeep and Dodge dealerships. Specifically, Castro informed

> FCA that Defendants were the successors to Dick in connection with the management of those dealerships – and that Richard was not Dick's successor in the management of those dealerships.

Compl. ¶ 58 (emphasis added). Plaintiffs fail to plead with adequate specificity the time when the telephone calls were made and emails were sent.

However, Plaintiffs request an opportunity to amend their Complaint to comply with Rule 9(b) and properly allege causation. Pls.' Objs. at 4–5, 7. If not for the Court's earlier holding that amending would be futile, the Court would have granted leave to amend here.

## B. Enterprise

Next, Judge Schydlower found that Plaintiffs failed to sufficiently plead the "enterprise" element of a civil RICO claim. R&R at 8–9. Plaintiffs object to Judge Schydlower's findings on the grounds that they have properly alleged "enterprise" or could do so if granted leave to amend. Pls.' Objs. at 15–19. The Court agrees with Judge Schydlower that Plaintiffs' pleading of the "enterprise" element is insufficient, but it also agrees with Plaintiffs that they could likely cure if granted leave to amend.

"A plaintiff asserting a RICO claim must allege the existence of an enterprise." *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Therefore, a "RICO enterprise can be either a legal entity or an association-in-fact." *Crowe*, 43 F.3d at 204. Further, the Fifth Circuit has determined that an "association-in-fact enterprise 1) must have an existence separate and apart from the pattern of racketeering, 2) must be an ongoing organization and 3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Id.* at 205.

Plaintiffs' "enterprise" pleading states:

> Beginning in the summer of 2014, Defendants engaged in their wrongful enterprise to acquire and exercise control over PMI and, in turn, the Poe family business in violation of RICO. Specifically, through their business relationships with Dick, Defendants first advised and convinced Dick to remove Richard as an executor of Dick's Estate in his Last Will dated September 22, 2014. Then, to ensure that they would obtain control over PMI and the Poe family business, they facilitated the share issuance a mere 10 days prior to Dick's death on May 16, 2015. After that, Defendants operated together to implement and exercise continued control over PMI and the Poe family business. *Defendants are separate and distinct from their wrongful enterprise, which affects interstate commerce. Thus, Defendants acted as an "enterprise" within the meaning of 18 U.S.C. § 1961(4) that affects interstate commerce.*

Compl. ¶ 75 (emphasis added). Judge Schydlower concluded that Plaintiffs had failed to clearly delineate whether PMI is the enterprise or whether Defendants in conjunction with PMI are the enterprise. R&R at 9. Further, Judge Schydlower noted that Plaintiffs failed to specify how, if Defendants in conjunction with PMI are the enterprise, there was an existence separate and apart from the pattern of racketeering. *Id.* The Court agrees with Judge Schydlower that Plaintiffs' pleadings are too conclusory as they currently stand. *See Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987) ("[P]laintiffs must plead specific facts, not mere conclusory allegations, which establish the enterprise."). Nevertheless, based on Plaintiffs' objections, the Court expects that they could cure the deficiencies if granted leave to amend. Accordingly, if not for the Court's earlier finding that granting Plaintiffs leave to amend with regard to continuity would be futile, the Court would have granted leave to amend here.

## C. RICO Conspiracy and State-Law Claims

Finally, Judge Schydlower determined that Plaintiffs' RICO conspiracy claim must fail because their substantive RICO claims failed and recommended that the Court not exercise supplemental jurisdiction over the pendent state-law claims. R&R at 10. Plaintiffs objected on

the grounds that their substantive RICO claims are facially plausible. Pls.' Objs. at 19. The Court agrees with Judge Schydlower.

If a plaintiff fails to plead the requisite elements of a RICO claim under 18 U.S.C. §§ 1962(a)–(c), he is likewise unable to plead a conspiracy under § 1962(d) to violate those sections. *See Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002). The Court earlier found that Plaintiffs have failed to sufficiently plead all of the requisite elements of the RICO claims under Sections 1962(b) and (c) and that it would be futile to give Plaintiffs leave to amend. Accordingly, Plaintiffs are also unable to state a claim for RICO conspiracy under § 1962(d).

"The district court has discretion to dismiss pendent state law claims, and may decline to exercise supplemental jurisdiction over such claims where it has dismissed claims over which it had original jurisdiction." *St. Germain v. Howard*, 556 F.3d 261, 263–64 (5th Cir. 2009) (*per curiam*). Indeed, "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). In the instant case, it is early in the litigation, the Court has not expended significant resources on the case, and there is no indication that a dismissal would prejudice any of the litigants. Accordingly, the Court agrees with Judge Schydlower that dismissing the pendent state-law claims is proper here.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiffs' "Objections to Report and Recommendation of the Magistrate Judge" (ECF No. 25) are **OVERRULED**.

**IT IS FURTHER ORDERED** that the "Report and Recommendation of the Magistrate Judge" (ECF No. 23) is **ACCEPTED**.

IT IS FINALLY ORDERED that the Clerk of the Court shall **CLOSE** this matter after docketing the Final Judgment to be issued separately on this day.

So ORDERED and SIGNED this 7th day of September 2018.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE